IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

| | |
|---|---|
| **DONGGUAN CHENG ONE CO., LTD.,** | Civil Action No. |
| Plaintiff, | 1:24-cv-03388 |
| -against- | |
| **DESEN INC.,** | **DECLARATION OF YANGYANG WU** |
| Defendant. | |

-----------------------------------------------------------------------X

STATE OF NEW YORK:   }
            SS:   }
COUNTY OF QUEENS:   }

I, Yangyang Wu, declare the following to be true under the penalties of perjury pursuant to 28 U.S.C. § 1746:

1. I am the principal of the defendant corporation, Desen, Inc.

2. I respectfully submit this affidavit in support of this motion, by Order to Show Cause, to vacate the judgment, and to reopen and restore proceedings, so that I may interpose the proposed answer attached hereto, on behalf of Desen, Inc., and assert the defenses listed therein against plaintiff's claims.

3. This motion is made on an emergency basis because as a result of plaintiff's enforcement of the judgment, Desen, Inc's bank account is now frozen.

4. I am fully familiar with the facts and circumstances of this case based on my review of the files and records maintained by Desen, Inc.

5. The address at which Desen, Inc. is registered with the New York Secretary of State is 99-03 43rd Avenue, Corona, New York 11368, within the county of Queens, state of New York.

6. This is also my home address, where I live with my spouse, Mr. Fei Xu

1

7. Desen, Inc. is in the business of supplying retailers in the U.S. with clothing imported from The People's Republic of China ("China").

8. Through this declaration, I respectfully address two issues.

9. First, I respectfully submit that Desen, Inc. did not receive the complaint.

10. Second, I respectfully request that this case be reopened so that Desen, Inc. may assert its defenses against the allegations in the complaint.

11. The residence located at the premises commonly known as 99-03 43rd Avenue, Corona, New York 11368 is a single family home in the county of Queens, city of New York, state of New York.

12. There is no mail receptacle. Instead, the mailman drops off mail by hand in the vestibule, on the ground floor, in between the two entrance doors.

13. My spouse, Xu Fei, and I are the only ones who collect the mail.

14. As Mr. Fei attests in his declaration, and as I attest herein, neither of us ever received the summons and complaint.

15. Because there is no mail receptacle associated with the premises at 99-03 43rd Avenue, Corona, New York 11368, there have, on occasion, been instances of theft, or other difficulties with delivery and retrieval of mail.

16. As to the substance of the complaint, I have disputed, and continue to dispute the balance alleged by plaintiff, Dongguan Cheng One Co., Ltd., because the goods in question were shipped too late. Therefore, Desen, Inc. was not able to use them for the intended purpose: to promptly resell them to retailers in the U.S.

17. Dongguan Chen One Co., Ltd. manufactures low cost, seasonal, but fashionable clothing, which Desen, Inc. then purchases, imports, and sells to retail outlets in the U.S., such as Burlington and Ross.

18. The whole point is to get these items of clothing to retailers to the U.S. on time, so that the retailers can then sell them. The premise of the continuing business relationship between Dongguan Cheng One Co., Ltd. and Desen, Inc. is that time is of the essence.

19. As indicated in the attached invoices, collectively attached hereto as Exhibit E, Dongguan Cheng One Co., Ltd. did not ship the merchandise on time, and so from the beginning, it was clear that delivery would be late.

20. In the spreadsheet attached hereto as Exhibit F, the deliveries which were delayed due to tardy shipping by Dongguan Cheng One Co., Ltd. are tabulated.

21. Namely, sixteen sets of deliveries were delayed due to late production and shipping.

22. For the first set of goods, (corresponding to purchase order ("PO") DSN-CY1107, Exhibit E, page 26, and spread sheet row #1, Exhibit F), the PO date was April 23, 2021, with a planned shipping ("X-Factory") date of June 1, 2021. However, this set of goods was not shipped until July 14, 2021, and therefore, did not reach the port in the U.S. until August 3, 2021, and could not be retrieved until September 2, 2021. However, I had told my intended customer that the goods—cardigan sweaters—would shipped to their store on July 1, 2021. When I could not make this shipping deadline, the intended customer cancelled the order. I ended up having to sell the sweaters as stock or inventory, at a significantly lower price, after keeping the goods for a significant time in a warehouse, which charged storage fees.

23. The second set of goods (corresponding to PO BUR-CY-1114A and PO BUR-CY-1118, Exhibit E, pp. 19 and 24, and spread sheet row #2, Exhibit F) had PO dates of August 3, 2021 and August 6, 2021, and planned shipping dates of September 30, 2021, but not shipped until October 18, 2021, and therefore, did not reach the port until November 6, 2021, and could not be retrieved until November 29, 2021. These also were sweaters, intended for sale at Burlington Coat Factory. I had promised to ship them to Burlington on October 30, 2021. When I could not fulfill the order, Burlington cancelled it, and again, I had to put the sweaters into storage, with the accompanying fees, until I was able to sell them.

24. The third set of goods (corresponding to PO BUR-CY 1114B and PO BUR-CY1115A, Exhibit E, pp. 22 and 25, and spread sheet row #3, Exhibit F) were ordered on August 3, 2021, with X-Factory dates of September 30, 2021 and October 30, 2021, but not shipped until November 8, 2021, and therefore, did not reach the port until November 22, 2021, and could not be retrieved until December 8, 2021.

25. The fourth set of goods (corresponding to invoices CY 1117, CY 1118, CY 1123, and CY 1124, Exhibit E, pp. 17-20, and spread sheet row #4, Exhibit F) was ordered on August 5, 6, and 27, 2021, with X-Factory dates of September 30, 2021, October 7, 2021, and October 30, 2021, but not shipped until November 9, 2021, and therefore, did not reach the port until November 30, 2021, and could not be retrieved until December 16, 2021. The shipping dates I had originally promised to ship to the intended customers were November 1, November 7, and November 30. In this case, as well, the intended customer refused to make the purchase, and I had to keep the goods in storage, in a warehouse.

26. The fifth set of goods (corresponding to invoices CY 1115B, CY 1125A, CY 1126A, Exhibit E, pp.13, 15, 23, and spread sheet row #5, Exhibit F) was ordered on August 3, 2021 and August 26, 2021, each with X-Factory dates of October 30, 2021, but not shipped until November 14, 2021, and therefore, did not reach the port until December 11, 2021, and could not be retrieved until December 28, 2021. However, the sale dates for which I had made a commitment to my intended buyer were September 3, 2021 and September 26, 2021. The merchandise in this case also consisted of sweaters, which also had to be stored in a warehouse, instead of being sold for a profit.

27. For the each of the following sets of orders, I had also promised the goods to the intended retail buyer about one month after the X-Factory date.

28. The sixth set of goods (corresponding to invoices BUR-CY 1114B and BUR-CY 1118, Exhibit E, pp. 19 and 25, and spread sheet row #6, Exhibit F) was ordered on August 3, 2021 and August 6, 2021, with X-Factory dates of September 30, 2021 and October 30, 2021, but not shipped until October 28, 2021, and therefore, did not reach the port until November 15, 2021, and could not be retrieved until January 3, 2022.

29. The seventh set of goods (corresponding to invoices BUR-CY 1114A, BUR-CY 1115A, and BUR-CY 1123, Exhibit E, pp. 18, 22, and 24 and spread sheet row #7, Exhibit F) was ordered on August 3, 2021, and August 27, 2021, with X-Factory dates of September 30, 2021 and October 30, 2021, but not shipped until October 29, 2021, and therefore, did not reach the port until November 13, 2021, and could not be retrieved until January 7, 2022.

30. The eighth set of goods (corresponding to invoices CY 1116, CY 1117, CY 1123, CY 1125, and CY 1126, Exhibit E, pp. 13, 16, 18, 20 and 21, and spread sheet row #8, Exhibit F) was ordered on August 3, 2021, August 5, 2021, August 26, 2021, August 27, 2021 with

X-Factory dates of September 30, 2021, October 7, 2021, October 30, 2021, November 30, 2021, but not shipped until November 25, 2021, and did not reach the port until February 21, 2022, and could not be retrieved until March 2, 2022.

31. The ninth set of goods (corresponding to invoices CY 1117 and CY 1124, Exhibit E, pp. 17 and 20, and spread sheet row #9, Exhibit F) was ordered on August 5, 2021 and August 27, 2021, with X-Factory dates of October 7, 2021 and October 30, 2021, but not shipped until December 2, 2021, and therefore, did not reach the port until January 29, 2022, and could not be retrieved until February 8, 2022.

32. The tenth set of goods (corresponding to invoices ROS-CY 1125 and ROS-CY 1126, Exhibit E, pp. 13 and 16, and spread sheet row #10, Exhibit F) was ordered on August 26, 2021, with X-Factory dates of October 30, 2021 and November 30, 2021, but not shipped until December 27, 2021, and therefore, did not reach the port until February 25, 2022, and could not be retrieved until March 4, 2022.

33. The eleventh set of goods (corresponding to invoices ROS-CY 1125, ROS-CY 1126, Exhibit E, pp. 13-16, and spread sheet row #11, Exhibit F) was ordered on August 26, 2021, with an X-Factory dates of October 30, 2021 and November 30, 2021, but was not shipped until December 27, 2021, and, therefore, did not reach the port until February 25, 2022, and could not be retrieved until March 8, 2022.

34. The twelfth set of goods (corresponding to invoices WMI-CY 2002 A, B, and C; ROS-CY 1125 A, ROS-CY 1125 B, ROS-CY 1126 A, ROS-CY 1126 B, Exhibit E, pp. 2-4, 13-16, and spread sheet row #12, Exhibit F) was ordered on August 26, 2021 and October 4, 2021, with X-Factory dates of October 30, 2021, November 30, 2021, and December 15, 2021,

but not shipped until December 29, 2021, and therefore, did not reach the port until March 5, 2022, and could not be retrieved until March 11, 2022.

35. The thirteenth set of goods (corresponding to invoices ROS-CY 2003 A, ROS-CY 2003 B, and DSNR-CY 2007, Exhibit E, pp. 6, 10, and 11, and spread sheet row #13, Exhibit F) was ordered on October 6, 2021 and October 22, 2021, with X-Factory dates of December 1, 2021, December 10, 2021, and December 20, 2021, but not shipped until January 22, 2022, and therefore, did not reach the port until March 26, 2022, and could not be retrieved until April 6, 2022.

36. The fourteenth set of goods (corresponding to invoices DSNB-CY 2006, DSBR-CY 2007, Exhibit E, pp. 6-9, and spread sheet row #14, Exhibit F) was ordered on October 14, 2021 and October 22, 2021, with X-Factory dates of December 15, 2021, December 20, 2021, December 25, 2021 and January 30, 2022, but not shipped until January 23, 2022, and therefore, did not reach the port until March 18, 2022, and could not be retrieved until March 29, 2022.

37. The fifteenth set of goods (corresponding to invoices DSNR-CY 2003, DSNB-CY 2009, and DSNB-CY 2010, Exhibit E, pp. 1, 5, 10 and 11, and spread sheet row #15, Exhibit F) was ordered on October 6, 2021, October 22, 2021, and November 10, 2021, with X-Factory dates of December 1, 2021, December 10, 2021, and December 20, 2021, was not shipped until March 28, 2022, and therefore, did not reach the port until April 14, 2022, and could not be retrieved until April 26, 2022.

38. The sixteenth set of goods (corresponding to invoices DSNR-CY 2003, DSNB-CY 2009, and DSNB-CY 2010, Exhibit E, pp. 1, 5, 10-11, and spread sheet row #16, Exhibit F) was ordered on October 6, 2021, October 22, 2021, and November 10, 2021 with X-Factory

dates of <u>December 1, 2021, December 10, 2021, and December 20, 2021</u>, but not shipped until <u>March 28, 2022</u>, and therefore, did not reach the port until April 14, 2022, and could not be retrieved until <u>April 27, 2022</u>.

39. Dongguan Cheng One Co., Ltd. is fully aware of what type of business Desen, Inc. does, and why Desen, Inc. imports clothing from them. Its representatives know very well that if the goods are not shipped on time, they are useless.

40. I did communicate with Dongguan Cheng One Co., Ltd. to advise that the goods had been shipped late. They knew that in the regular course of my business, I made a commitment to retail buyers approximately one month from the X-Factory date.

41. As a result of Dongguan Cheng One Co., Ltd.'s late shipments, I was not able to sell any of the aforementioned goods to the intended retailers, and suffered financial damages in terms of lost sales and storage fees.

42. I have reviewed the complaint with my attorney, and I am praying that this Court will vacate the judgment, reopen the case, and allow me a chance to defend Desen, Inc, against this complaint.

43. Desen, Inc. did not receive the complaint, and I assert that if the case is reopened, I have a meritorious defense. My attorney and I have prepared a proposed answer to the complaint, also attached hereto, to be filed with the Court, if this case is reopened.

44. Dongguan Cheng One Co., Ltd. and Desen, Inc. had a business relationship, which was premised on the principle that time is of the essence. Dongguan Cheng One Co., Ltd. breached its end of the bargain by shipping the goods too late.

**WHEREFORE**, defendant, **DESEN INC.**, respectfully requests that this Court vacate the judgment, reopen the proceedings of the instant action, allow defendant to file an answer, and grant such other and further relief as to this Court shall seem just, equitable, and proper.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 11, 2025.

                                                        *Yangyang Wu*
                                                    **YANGYANG WU**