IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
Dongguan Cheng One Co., Ltd.,

                Plaintiff,

   -against-

Desen Inc.,

               Defendant.
-----------------------------------------------------------------x

Civil Action No.: 1:24-cv-03388-ER

**Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Vacate Default Judgment**

MAZZOLA LINDSTROM, LLP

_____
Shan (Jessica) Chen
Richard E. Lerner
*Counsel for plaintiff*
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
(d) 646-416-6280; 646-813-4345
(m) 347-652-9046; 917-584-4864
jessica@mazzolalindstrom.com
richard@mazzolalindstrom.com

1

# **TABLE OF CONTENTS**

                                                                                     **Page**

TABLE OF CONTENTS ............................................................................................................... 2

I. Introduction ................................................................................................................................ 3

II. Legal Standard .......................................................................................................................... 3

III. Argument ................................................................................................................................. 4

    A. Plaintiff Did Everything Required of It to Serve Defendant, and Defendant was Properly Served. ...................................................................................................................................... 4

    B. Defendant Delayed Too Long in Bringing the Motion, and Seems to Have Willingly Defaulted Inasmuch as Its Claim That It Could Not Receive Mail at Its Registered Address Should Not Be Credited ........................................................................................................... 4

        1.   Defendant Willfully Defaulted. ...................................................................................... 6

        2.   Plaintiff Would Be Prejudiced by Vacatur of the Default Judgment, and Defendant Has Not Shown Otherwise. ................................................................................................... 7

        3. Defendant Did Not Move for Vacatur Within a Reasonable Time. ................................... 8

    C. Defendant Has Not Presented a Meritorious Defense ........................................................ 10

    D. Defendant's Request for Injunctive Relief Should Be Denied or Qualified. ...................... 13

        A.   Defendants Demonstrate a Likelihood of Success on the Merits .................................. 13

        B.   Defendants Demonstrate Irreparable Injury .................................................................. 14

        C.   The Equities Favor Messrs. Hyman and Frey ............................................................... 17

IV. Conclusion ............................................................................................................................. 18

Plaintiff Dongguan Cheng One Co., Ltd., by and through its undersigned counsel, respectfully submits this memorandum of law in opposition to the motion (DE 31) filed by Defendant Desen Inc. to vacate the default judgment entered on January 22, 2025 (DE 28).

## I.     Introduction

Defendant's motion fails to meet the burden required under Rule 60(b) of the Federal Rules of Civil Procedure. The judgment should not be vacated because (1) Defendant was properly served and failed to timely respond, (2) Defendant's claimed excuse of non-receipt is unsupported and not credible, (3) the motion is untimely and reflects undue delay, and (4) Defendant fails to establish a complete meritorious defense.

## II.    Legal Standard

Relief under Rule 60(b)(1) and (6) is an extraordinary remedy, granted only in exceptional circumstances. "When a district court decides a motion to vacate a default judgment pursuant to the provisions of Rule 60(b), the court's determination must be guided by three principal factors: "(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166-167 (2d Cir. 2004). The movant must also move within a reasonable time, per FRCP 60(c): "A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." "Motions to vacate default judgments are assessed via the more stringent standard of Rule 60(b), rather than the lesser standard of Rule 55(c) governing certificates of default, because courts are less willing to upset a final judgment." *Aetna Life Ins.*

*Co. v. Licht*, 2004 U.S. Dist. LEXIS 21538, *10 (S.D.N.Y. 2004), citing *American Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 60 (2d Cir. 1996).

### III. Argument

#### A. Plaintiff Did Everything Required of It to Serve Defendant, and Defendant was Properly Served.

As a preliminary matter, as far as action by Plaintiff was required, there can be no argument that Defendant was not properly served. Defendant was served by service made upon and accepted by the New York Secretary of State. (Affirmation of Service, DE 6). This method of service is sufficient and legally effective under FRCP 4(e)(1) per New York CPLR § 311(a)(1) and New York Business Corporation Law § 306(b)(1)(i). Defendant's claim of non-receipt of service thus should not be taken as an objection to proper service, and does not render the service invalid.

#### B. Defendant Delayed Too Long in Bringing the Motion, and Seems to Have Willingly Defaulted Inasmuch as Its Claim That It Could Not Receive Mail at Its Registered Address Should Not Be Credited.

As Defendant's principal Yangyang Wu admits (DE 31-2, ¶ 3), the impetus for Defendant's bringing its motion to vacate default judgment—an "emergency" motion no less—was that Defendant received notice that its bank account was restrained per Plaintiff's execution attempt. What brought about this sudden need for urgency on Defendant's part? Let us review the timeline.

In May of 2024, Plaintiff completed service upon Defendant by serving the Secretary of State (Affirmation of Service, DE 6), and Plaintiff eventually on August 8, 2024, served further notice upon Defendant (Affidavit of Service of clerk's certificate of default, DE 14). Putting aside the dispute over whether Defendant actually received service of process, Defendant certainly did receive notice served upon it on December 27, 2024, that Plaintiff was seeking a

4

default judgment. Exhibit C. This notice was mailed to the same Queens address – the Defendant's registered address – at which Defendant claimed that it had not been able to receive the summons and complaint. But Defendant **did receive mail this time, and chose to do nothing with it,** making no appearance to oppose the motion for a default judgment. (See DE-26, "CERTIFICATE OF SERVICE of Amended Order to Show Cause for Default Judgement and supporting documents.")

Plaintiff then received a default judgment from the Court on January 22, 2025 (DE 28), and per the docketed Certificate of Service (DE 30), notice of this default judgment was served upon Defendant by mail going out on January 24, 2025. It was Plaintiff's counsel's custom to send notices to Defendant at both its Queens address and its Manhattan address to ensure receipt. Defendant's Yangyang Wu signed a certified mail receipt on January 25, 2025, proving receipt by Defendant of the notice sent to the Manhattan address. Exhibit D (top right document only). The time for Defendant to move to vacate the default judgment began to run.

**Defendant made no motion to vacate the default in February.** After Defendant's counsel filed a notice of appearance (DE 29), Plaintiff's counsel reached out on March 3, 2025 to see what Defendant was planning to do. For the first time in the entire litigation, Defendant responded two days later. (Exhibit E, and DE 31-1, ¶ 32.) This was the first time Plaintiff had heard from the Defendant, which until then had ignored all notices and court orders. Defendant's counsel advised that Defendant wanted to move to vacate. Very well. Plaintiff waited. March passed, **no motion**. For good measure, on or around March 31, 2025, Plaintiff sent to Defendant at its Queens and Manhattan addresses an information subpoena (Exhibit F) asking where Defendant kept its money. See the three certified mail slips on the left of Exhibit D. Defendant received this at its Manhattan address on April 14, 2025. See Exhibit D (the lower right

5

document). And Defendant received this at its Queens address on April 28, 2025. See Exhibit G. Defendant never responded to the subpoena. And April passed, **no motion**.

Up until this month, May 2025, Defendant had been ignoring this lawsuit, until Plaintiff procured restraints on Defendant's Chase and Citibank bank accounts in mid-May (Exhibit H and Exhibit I). Immediately thereafter, Defendant filed its motion to vacate judgment, asserting an emergency basis and a great need for urgency by the Court. This was an "emergency" of its own making. There is not one good reason to believe that Defendant – having ignored all the notices and court orders until its accounts were restrained – would have gotten around to making a motion to vacate the judgment if Defendant had not been faced with the possibility, which it should have foreseen, that it would actually have to pay its debt. The lessons from the above are the following.

1. **Defendant Willfully Defaulted.**

Defendant consistently received mail at both its Queens and Manhattan addresses, and received everything that was sent to it there throughout the course of this lawsuit, except, it claims, the summons and complaint. Defendant blames the mailman. This is despite the fact that Defendant's address was its registered address, where it was responsible for being able to receive service of process duly served. "[I]t is a corporation's obligation to keep on file with the Secretary of State the current address of an agent to receive service of process (*Cristo Bros. v M. Cristo, Inc.*, 91 AD2d 807), and failure to meet that obligation will not constitute reasonable excuse to vacate a default judgment (*Conte Cadillac v C.A.R.S. Purch. Serv.*, 126 AD2d 621, 622). It is for this reason that service of process on a corporation is deemed complete when the Secretary of State is served, regardless of whether such process ultimately reaches the corporate defendant." *Cedeno v. Wimbledon Bldg. Corp.*, 207 A.D.2d 297, 298 (1st Dept. 1994). See also

6

*Brinks Global Servs. USA, Inc. v. Bonita Pearl Inc.*, 686 F. Supp. 3d 357, 369, n. 14 (S.D.N.Y. 2023) (FRCP 4(d) waiver notice good when sent to current registered address even though registered address was defunct). "[W]e have refused to vacate a judgment where the moving party had apparently made a strategic decision to default." *American Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 60 (2d Cir. 1996).

Defendant's motion should be given the same treatment as the defendant's motion in *Fisher v. Lewis Constr. NYC Inc.*, 179 A.D.3d 407, 408 (1st Dept. 2020):

> Defendant failed to establish a reasonable excuse for its default (*see* CPLR 5015 [a] [1]). Plaintiff properly served defendant corporation "by means of service upon the Secretary of State, and the records indicate that [it] was a viable corporation at the time" (R*esidential Bd. of Mgrs. of 99 Jane St. Condominium v Rockrose Dev. Corp.*, 17 AD3d 194, 194, 796 fNYS2d 35 [1st Dept 2005]). Service of process was complete when plaintiff served the Secretary of State (Business Corporation Law § 306 [b] [1]), "irrespective of whether the process subsequently reache[d] the corporate defendant" (*Associated Imports v Amiel Publ.*, 168 AD2d 354, 354, 562 NYS2d 678 [1st Dept 1990], *lv dismissed* 77 NY2d 873, 571 NE2d 85, 568 NYS2d 915 [1991]). Defendant's conclusory denial of receipt of service fails to rebut the presumption of proper service created by the affidavit of service (*see Matter of de Sanchez*, 57 AD3d 452, 454, 870 NYS2d 24 [1st Dept 2008]), and defendant's excuse that its registered address, where plaintiff mailed "additional service" and subsequent notices (Business Corporation Law § 306 [b] [2]; see CPLR 3215 [g] [4] [I]), was not a reliable mail drop, is unavailing. By its own account, defendant's failure to answer appears to have been willful and dilatory (*see John Wiley & Sons, Inc. v Grossman*, 132 AD3d 559, 18 NYS3d 610 [1st Dept 2015]).

### 2. Plaintiff Would Be Prejudiced by Vacatur of the Default Judgment, and Defendant Has Not Shown Otherwise.

Plaintiff would be considerably prejudiced by a grant of Defendant's motion to vacate. As Defendant's own motion papers show (DE 31-11), after Defendant's Chase account was restrained, Defendant apparently tried and failed to pay about $1.7 million out of the account—and not to judgment creditor Plaintiff. (The reason for why the amount to leave the account exceeded its contents is unclear.) The prospect of Defendant's trying to hide assets from Plaintiff

is thus very real. Plaintiff has already incurred significant expense to obtain judgment and initiate enforcement. Vacating the judgment now would result in further delays and burdens, prejudicing Plaintiff's ability to recover.

Furthermore, the burden at this stage is not on Plaintiff to show that it would be prejudiced by Defendant's motion's being granted, but rather the burden is on Defendant to show that Plaintiff would *not* be prejudiced by vacatur of the judgment. *See, e.g., State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 246 F. Supp. 2d 231, 238 (S.D.N.Y. 2002) ("defendants had not met their burden of showing a lack of prejudice"). Defendant's memorandum mentions "prejudice" only twice: when acknowledging it as a requirement for the court's consideration in adjudicating this motion, and secondly in the following self-damaging line: "Some prejudice accrues to the plaintiff through its efforts and success in enforcing the judgment." (DE 31-12). Defendant's other motion papers seem never to allude to prejudice. Thus Defendant has completely failed to meet its burden on this element.

### 3.     Defendant Did Not Move for Vacatur Within a Reasonable Time.

As emphasized in the timeline above, the story of this case both before and after entry of judgment has been one of Defendant's willful failure to engage with this lawsuit in any way, even ignoring Plaintiff's post-judgment information subpoena. Only the restraints on Defendant's bank accounts finally triggered it to file its motion for vacatur on May 12, 2025, almost four full months after entry of default judgment on January 22, 2025.

Courts have found such a delay to be unreasonable. *See 45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 648 B.R. 16, 26 (Bankr. S.D.N.Y. 2023) ("The Movant here has not acted within a reasonable time. Over four months elapsed between the March 23rd hearing — when the Court found Crown Mansion to be in default — and the filing

8

of this Motion [to vacate default judgment]. During those four months, Movant did not seek reconsideration of the Court's decision regarding default, did not participate in the trial, did not oppose the entry of the judgment, did not appeal the court's order entering judgment, and did not make a formal application to adjourn the trial.").

See also *Gesualdi v. Quadrozzi Equip. Leasing Corp.*, 2016 U.S. Dist. LEXIS 102818, *23-24 (E.D.N.Y. 2016):

> In light of the above, it is respectfully recommended that the District Court find that Defendants' motion to vacate, which was filed fifteen months after the entry of default, four months after the entry of judgment, and, at a minimum, three months after Defendants became aware of the entry of judgment, was untimely pursuant to Fed. R. Civ. P. 60(b)(1). *See Mason Tenders Dist. Council Welfare Fund v. M & M Contr. & Consulting*, 193 F.R.D. 112, 114-15 (E.D.N.Y. 2000) (three-month delay between learning of the default judgment and filing a motion to vacate the default judgment "fatally dilatory"); *Sony Corp. v. S.W.I. Trading, Inc.*, 104 F.R.D. 535, 541-42 (S.D.N.Y. 1985) (holding that Rule 60(b)(1) motion brought five months after entry of default judgment and two months after defendant received notice of default judgment was untimely). On this basis alone, Defendants' motion to vacate the default judgment may be denied. *See, e.g., Johannes Baumgartner Wirtschafts-und Vermoegensberatung GMBH v. Salzman*, 969 F. Supp. 2d 278, 293 (E.D.N.Y. 2013) (denying motion to vacate on timeliness grounds alone); *Fairfield Fin. Mortg. Group, Inc. v. Luca*, 06 Civ. 5962 (JS) (WDW), 2011 U.S. Dist. LEXIS 91300, at *11 (E.D.N.Y. Aug. 16, 2011) ("As such, [the defendants'] motion to vacate is denied as untimely under Rule 60(b)(1).").

Counsel's explanation about his workload and stress (DE 31-1, ¶ 23-26) is not a sufficient justification for delay. Excusable neglect is not an attorney's "having taken on too many cases to give proper attention to this one." *United States v. Cirami*, 563 F.2d 26, 34-35 (2d Cir. 1977), citing *Cline v. Hoogland*, 518 F.2d 776, 778 (8th Cir. 1975) ("Furthermore, appellant's counsel admits that he was aware of the motion for summary judgment, but neglected to file a resistance because he was busy with other matters. Ignorance or carelessness of an attorney is generally not cognizable under FED. R. CIV. P. 60(b).").

9

### C.     Defendant Has Not Presented a Meritorious Defense.

Defendant's claim that shipments were late does not refute the existence of a contract or the delivery of goods. Even if delays occurred, Defendant has not shown that such delays excuse non-payment or constitute a complete defense. There is no indication that Defendant rejected the goods, revoked acceptance, or complied with UCC notice requirements. Moreover, Defendant offers only conclusory assertions through a self-serving declaration, rather than admissible evidence or contemporaneous documentation.

"Whether a defense is meritorious 'is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense.'" *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 167 (2d Cir. 2004), quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993).

Plaintiff made three claims against Defendant: breach of contract, unjust enrichment, and account stated. (Complaint, DE 1). Defendant makes a number of attempts to establish a meritorious defense to liability. First, Defendant's proposed answer (DE 31-10, ¶¶ 18-20) poses three affirmative defenses. Second, Defendant's principal Yangyang Wu's affirmation (DE 31-2, ¶¶ 16-44) presents an elaboration of what the first two affirmative defenses mean. Third, Defendant's memorandum (DE 31-12, p. 4), says that Plaintiff would be liable to Defendant for damages in this action, were this action to proceed. Let's consider the affirmative defenses:

> **First:** "18. The plaintiff did not ship the goods at issue in a timely fashion, pursuant to the course of dealing between plaintiff and defendant, therefore, causing loss and damages to defendant, DESEN, INC."
>
> **Second:** "19. Therefore, defendant, DESEN, INC., did not breach any contractual obligations with plaintiff."

**Third:** "20. Venue in this matter should lie in the Eastern District of New York because the principal place of business of defendant, DESEN, INC., is located in the county of Queens, state of New York."

These affirmative defenses do not set forth a complete defense. For one thing, venue is proper in the Southern District of New York. 28 U.S. Code § 1391(b)(2) says that "A civil action may be brought in— a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]" Defendant has had two addresses of relevance to this action: its registered address in Corona, Queens, and its business address on Broadway Avenue in Manhattan. Defendant's purchase orders consistently gave as Defendant's address "1407 BROADWAY, SUITE 3412, NEW YORK NY 10018". Exhibit A. Defendant's CEO's business card gave the same address. Exhibit B. Defendant signed the return receipts for certified mail sent even recently to Defendant's Manhattan address. Exhibit D, lower right document. Therefore, regardless of what technically may be regarded as Defendant's residence, Plaintiff's business dealings were consistently with Defendant's Manhattan business office, not Defendant's principal's family house in Queens (DE 31-2, ¶ 6). Venue is thus proper under 28 U.S. Code § 1391(b)(2).

The first and second affirmative defenses essentially explain that Defendant is not liable for breach of contract. They are to be understood in light of Yangyang Wu's affirmation (DE 31-2, ¶¶ 16-44), which says that Defendant did not breach its contractual obligations to Plaintiff because Defendant shipped seasonal goods too late: "Dongguan Cheng One Co., Ltd. and Desen, Inc. had a business relationship, which was premised on the principle that time is of the essence. Dongguan Cheng One Co., Ltd. breached its end of the bargain by shipping the goods too late." (DE 31-2, ¶ 44).

This defense fails as a meritorious defense here because **it is not a complete defense against Plaintiff's claim of account stated**. "To prevail on a claim for account stated, a plaintiff must establish the following elements: "'(1) an account was presented; (2) it was accepted as correct; and (3) [the] debtor promised to pay the amount stated.'"" *Yiwu Lizhisha Access. Co., Ltd. v. Jjamz, Inc.*, 336 F. Supp. 3d 179, 183 (S.D.N.Y. 2018). Nowhere in Defendant's motion papers does Defendant refute Defendant's liability for account stated. Defendant does not even say that it rejected any of Plaintiff's invoices. Even if the goods were shipped late (which is not admitted), Defendant still accepted the invoices and was obligated to pay on them. There is no indication that Defendant rejected the goods or revoked acceptance. Defendant admits that it kept the goods and tried to sell them. (DE 31-2, ¶¶ 22-38). Even as to a breach-of-contract claim, if delays occurred, Defendant has not shown that such delays entirely excuse non-payment.

Defendant's third attempt at a meritorious defense is in its memorandum, which says that Plaintiff would be liable to Defendant for damages in this action, were this action to proceed: "Accordingly, Desen Inc. may potentially recover damages, pursuant to NY UCC 2-714." (DE 31-12, p. 4). However, because Defendant's proposed answer (DE 31-10) does not actually set forth any counterclaim against Plaintiff by which to make Plaintiff liable for damages, Defendant's argument here should be simply disregarded.

Even *if* Defendant's papers have stated a meritorious case, Defendant's motion should be denied. "[T]he existence of a meritorious defense, standing alone, would not justify relief under Rule 60(b)." *Anilina Fabrique de Colorants v. Aakash Chemicals & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988). That "plaintiff has a meritorious cause of action and will be denied his day in court … does not, however, require reversal." *Schwarz v. United States*, 384 F.2d 833, 835 (2d Cir. 1967). "Indeed, recent decisions in this Circuit have granted default judgments on

the basis of a willful evasion of process, even when the two other factors — meritorious defenses and possible prejudice — have tended to favor vacatur." *Matrix Polymers v. A-E Packaging*, Inc., 2017 U.S. Dist. LEXIS 2358, *25 (E.D.N.Y. 2017).

### D. Defendant's Request for Injunctive Relief Should Be Denied or Qualified.

Defendant requests a stay on Plaintiff's execution of the default judgment. Even if a temporary stay is granted, it should be conditioned on the Court's ordering the defendant to post security pursuant to Federal Rule 65(c), and it is submitted that the security should be equal to the judgment amount. Plaintiff has not collected any money yet from Defendant on the judgment, and so there is nothing to put into escrow. Defendant's J.P. Morgan Chase Bank and Citibank bank accounts are restrained but neither state domestication of the federal judgment, nor sheriff's levy, has been initiated against them.

## IV. Conclusion

Defendant repeatedly ignored notices and court orders, failing to appear or respond in any meaningful way throughout the proceedings. It was only after Plaintiff issued an information subpoena and successfully restrained Defendant's bank account that Defendant moved to vacate the default judgment. Notably, Defendant tried to withdraw nearly $2 million at once from the account after the default judgment, indicating an attempt to evade enforcement. This conduct demonstrates a clear disregard for the judicial process and has unnecessarily consumed the time and resources of the Court and the legal system. For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to vacate the default judgment.

Dated: New York, New York
May 20, 2025

Respectfully submitted,

MAZZOLA LINDSTROM, LLP

*[signature: Shan Chen]*

_____
Shan (Jessica) Chen
Richard E. Lerner
*Counsel for plaintiff*
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
(d) 646-416-6280; 646-813-4345
(m) 347-652-9046; 917-584-4864
jessica@mazzolalindstrom.com
richard@mazzolalindstrom.com

**To:**

**THE KASEN AND LIU LAW FIRM, PLLC**
*Attorneys for Defendant*
136-33 37th Avenue, #9C
Flushing, New York 11354
Tel: (718) 337-8012 Fax: (718) 709-8850