UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONGGUAN CHENG ONE CO., LTD.,

                    Plaintiff,

– against –

DESEN INC.,

                    Defendant.

**OPINION & ORDER**

24 Civ. 03388 (ER)

Ramos, D.J.:

On January 22, 2025, this Court entered default judgment in favor of Dongguan Cheng One Co., Ltd. ("Dongguan"). Doc. 28. Now before the Court is Desen Inc.'s motion to vacate the default judgment. Doc. 31. For the reasons set forth below, the motion is DENIED.

## I. BACKGROUND

### A. Factual Background

Dongguan is a foreign clothing manufacturer, with its principal office in Dongguan City, Guangdong Province, China. Doc. 1 ¶ 1. Desen Inc., a corporation based in New York, purchased clothing from Dongguan. *Id.* ¶¶ 3, 4; Doc. 31-1 ¶ 10. Dongguan states that the parties have an established business relationship based on prior transactions and fulfillment of orders, aside from the purchase orders at issue in the instant case. Doc. 1 ¶ 29.

In 2021, Desen issued a series of purchase orders to Dongguan. *Id.* ¶ 8. According to Dongguan, it manufactured and delivered the goods to Desen in accordance with the purchase orders, and it issued invoices totaling $1,999,857. *Id.* ¶ 9. Dongguan claims that the invoices were transmitted to Desen in the ordinary course of business, and that Desen did not object to or protest the invoices. *Id.* ¶¶ 10, 33. Additionally, Dongguan claims that Desen accepted delivery of the goods and did not raise any

complaints—whether as to the timeliness of their delivery, their quality, or their compliance with contract specifications. *Id.* ¶¶ 11, 32.

However, Dongguan alleges that Desen made payments totaling only $1,127,957, leaving an outstanding balance of $871,900. *Id.* ¶ 9. Dongguan claims that Desen made payments through 34 wire transfers, with each transfer incurring a $40 fee deducted by Desen's bank. *Id.* ¶ 12. Therefore, although Desen paid $1,127,957 by wire, Dongguan states that after deducting $1,360 in wire fees, it received only $1,126,597. *Id.* ¶ 13. Consequently, taking into account the wire transfer fees, Dongguan claims that Desen owes it $873,260, plus interest and costs. *Id.* ¶ 14.

Dongguan states that it sent Desen a final statement of account—which Desen received on August 29, 2023—demanding $871,900. *Id.* ¶ 35. It claims that Desen acknowledged that statement on August 30, 2023 and did not raise any issue with the amount owed. *Id.* ¶ 36. However, Desen has failed to fulfill its payment obligations to date, notwithstanding that Dongguan has demanded payment on multiple occasions. *Id.* ¶¶ 15, 16.

### B. Procedural History

Dongguan filed this action on May 2, 2024, alleging claims of breach of contract, unjust enrichment, and account stated. Doc. 1. On May 24, 2024, Dongguan served Desen through an authorized agent for the New York Secretary of State. Doc. 6; *see also* Doc. 13 (clerk's certificate of default). A clerk's certificate of default was entered against Desen on August 8, 2024. Doc. 13. That day, Dongguan served the certificate of default and supporting documents on Desen, through first-class mail. *See* Doc. 14.

On November 20, 2024, the Court issued an order to show cause for default judgment, setting a hearing date for December 19, 2024. Doc. 20. Dongguan attempted service of that order, and its supporting documents, on Desen via regular mail and

overnight FedEx delivery.[1]  *See* Doc. 21 ¶ 2.  However, on December 18, 2024, the Court issued an amended order to show cause, adjourning the hearing to January 22, 2025.[2]  Doc. 25.  Dongguan served that amended order and the supporting documents on Desen, both via mail and by effectuating service on the New York Secretary of State—the former which was delivered on December 19, 2024.  *See* Doc. 26 ¶ 2; *id.* at 2 (FedEx proof of delivery, with photo of delivered package); *see also* Doc. 27.

Neither Desen nor its counsel appeared at the show cause hearing on January 22, 2025.  That day, the Court entered default judgment in favor of Dongguan.  Doc. 28.  Dongguan served the default judgment order on Desen via mail; Yangyang Wu, the principal of Desen, signed a certified mail receipt on January 31, 2025.  Doc. 34 ¶ 16 (referncing Doc. 34-4).

On February 17, 2025, Desen retained counsel, Doc. 31-1 ¶ 22, and on February 23, 2025, counsel for Desen entered a notice of appearance in this case for the first time.  Doc. 29.  Dongguan states that on March 3, 2025, its counsel reached out to Desen's counsel, and the latter stated that Desen wanted to move to vacate default judgment.  Doc. 33 at 5.  "For good measure," Dongguan states, it sent an information subpoena to Desen on March 31, 2025, asking Desen to identify, among other things, its bank accounts, Employment Identification Numbers, and any security interests held in collateral valued in excess of $1,000.  *Id.*; *see* Doc. 34-6 (subpoena).  Desen did not respond to the information subpoena.  Doc. 33 at 6; Doc. 37.

---

[1] Although Dongguan states in a subsequent, December 16 letter, that it properly made service on Desen via regular mail and FedEx, Doc. 22, the December 9 certificate of service indicates that FedEx "reported continued delivery failure" of the documents, and it does not specify whether service through the United States Postal Service was successful, Doc. 21.

[2] The Court adjourned the order to show cause hearing at Dongguan's request.  On December 16, 2024, counsel for Dongguan had filed a letter stating that while it had properly made service on Desen via regular mail and FedEx, it had inadvertently failed to additionally serve the New York Secretary of State, as had been ordered by the Court.  Doc. 22.  Dongguan thus requested that the hearing on the order to show cause be adjourned to a later date, to allow it time to effectuate service on the New York Secretary of State.  *Id.*

3

At the start of May 2025, Dongguan "procured restraints" on Desen's JPMorgan Chase and Citibank bank accounts. Doc. 33 at 6; *see also* Doc. 34-8 (Letter from JPMorgan Chase, dated May 5, 2025, identifying a bank account as being "held" based on a request made against the "debtor," Desen); Doc. 34-9 (Letter from Citibank, dated May 8, 2025, confirming it was holding certain funds and had frozen "all responsive accounts located"). Desen then apparently tried, but failed, to withdraw or transfer $1,736,865.53 out of a JPMorgan Chase account. Doc. 33 at 7; *see* Doc. 31-11.

Shortly thereafter, on May 12, 2025, Desen moved to vacate the default judgment. Doc. 31. Desen stated its motion was made on an "emergency basis" because its bank account had been restrained. *See* Doc. 31-1 ¶ 32. Desen's attorney submitted a declaration attesting that Desen never received the complaint, and arguing that Desen has a meritorious defense to the claims in this case. *Id.* ¶¶ 14–16, 27–29. Mrs. Wu, who resides at the address that Desen is registered under with the New York Secretary of State, submitted a certified affirmation stating that the complaint was never in fact received. Doc. 31-2; *see also* Doc. 31-7 (copy of New York Secretary of State website, reflecting the service of process address for Desen). Mrs. Wu's spouse, Fei Xu, who also resides at that address, submitted a certified affirmation attesting to the same. Doc. 31-3. Desen requests that the Court (1) vacate the default judgment, (2) reopen the case, and (3) accept its proposed answer, Doc. 31-10.[3] On May 20, 2025, Dongguan submitted an opposition and accompanying exhibits. Docs. 33, 34.

On June 5, 2025, the Court held a conference on the motion to vacate. At Desen's suggestion, the Court agreed to reserve action on the motion for two weeks, so the parties could discuss potential settlement. The Court additionally directed Desen to respond to

---

[3] Desen also requested a stay of enforcement of the judgment against it, pending the decision on this motion, arguing that it would suffer irreparable harm if its assets were seized pursuant to the restraint of its bank accounts. Doc. 31-1 ¶ 33. That request is now denied as moot.

4

Dongguan's information subpoena within one week, and instructed the parties to provide a status report to the Court in two weeks.

On June 26, 2025, each party filed a status report informing the Court that settlement negotiations were not fruitful, stating that Desen had not responded to the information subpoena, and asking that the Court rule on the motion to vacate. Docs. 36, 37. Desen's counsel additionally stated that the principal of Desen had "closed communications" with his office. Doc. 37.

## II.    LEGAL STANDARD

Desen seeks vacatur of default judgment on the basis of "excusable default," pursuant to Federal Rules of Civil Procedure 60(b)(1) and 60(b)(6). Doc. 31-1 ¶ 13.

"The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). According to Rule 60(b), a court may vacate a judgment for any of the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Motions under Rule 60(b) appeal to the sound discretion of the district court. *Mendell in Behalf of Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990), *aff'd sub nom.*, *Gollust v. Mendell*, 501 U.S. 115 (1991). While there is a preference in the Second Circuit for resolving disputes on the merits, *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993), especially when substantial rights or substantial sums of money are demanded, *id.* at 97, the orderly and efficient

5

administration of justice may nevertheless require maintaining the default judgment, *id.* at 96.

In determining whether a default judgment should be set aside pursuant to Rule 60(b), the Court considers: "(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." *New York v. Green*, 420 F.3d 99, 108 (2d Cir. 2005) (quoting *State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166–67 (2d Cir. 2004)); *see also State University of New York v. Triple O, LLC*, 2022 WL 14177198, at *2 (2d Cir. Oct. 25, 2022) (summary order); *S.E.C. v. McNulty*, 137 F.3d 732, 738–41 (2d Cir. 1998) (affirming denial of motion to vacate brought pursuant to Rules 60(b)(1) and (6), based on assessment of willfulness, meritorious defense, and prejudice). Related factors, such as whether the failure to follow a rule of procedure was a mistake made in good faith or whether the entry of default would bring about a harsh or unfair result, may also be considered. *See Sony Corp. v. Elm State Electronics, Inc.*, 800 F.2d 317, 320 (2d Cir. 1986). These factors are applied "more rigorously in the case of a default judgment" rather than in a challenge to the entry of a default, "because the concepts of finality and litigation repose are more deeply implicated in the [default judgment] action." *Enron Oil Corp.*, 10 F.3d at 96; *see also 1199SEIU United Healthcare Workers East v. Alaris Health At Hamilton Park & Confidence Management Systems*, No. 22 Civ. 531 (LJL), 2022 WL 17251772, at *2 (S.D.N.Y. Nov. 28, 2022). "[A] proper case for Rule 60(b)(6) relief is only one of extraordinary circumstances, or extreme hardship." *De Curtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013) (quoting *Harris v. United States*, 367 F.3d 74, 81 (2d Cir. 2004)). Rule 60(b)(6) relief "is to be used sparingly." *De Curtis*, 529 F. App'x at 86.

### III. DISCUSSION

#### A. Whether the Default Was Willful

Desen argues its default was not willful because it did not in fact receive service of the complaint. Doc. 31-1 ¶ 14. Mrs. Wu and Mr. Xu attest to this in their affidavits. Doc. 31-2 (Wu Decl.); Doc. 31-3 (Xu Decl.).

In the context of default judgment, willfulness amounts to conduct that is "more than merely negligent or careless." *McNulty*, 137 F.3d at 738. In other words, willfulness is "egregious or deliberate conduct," such as where a defaulting defendant "apparently made a strategic decision to default." *American Alliance Insurance Co., Ltd. v. Eagle Insurance Co.*, 92 F.3d 57, 60–61 (2d Cir. 1996).

Courts tend to not find willfulness where a party disclaims receipt of process and there is no evidence in the record that it "engaged in deliberately evasive conduct." *Crawford v. Nails on 7th By Jenny Inc.*, 18 Civ. 9849 (ER), 2020 WL 564059, at *3 (S.D.N.Y. Feb. 5, 2020) (finding no willfulness where defendants swore they did not receive service at their place of work, and the record was devoid of evidence of evasive conduct). For example, in *Lu v. Nisen Sushi of Commack*, individual defendant Lam "denied receiving a copy of the Complaint and Summons both individually, and in his capacity as an agent for [defendant] Nissen Sushi." No. 18 Civ. 7177 (RJD), 2022 WL 16754744, at *6 (E.D.N.Y. Aug. 29, 2022). Although Nissen Sushi's Rule 60(b)(4) motion was denied because it, a corporate defendant, was properly served via the Secretary of State, the defendants' default was considered not willful. *Id.* at *6–7. The Court observed that "[s]ince Lam served as Nisen Sushi's manager and member, and could have accepted service on its behalf, his denial of receipt of service shows that Defendants were not willful in their default." *Id.* at *6. Here, Mrs. Wu and Mr. Xu likewise attest that they did not in fact receive service. Therefore, while their affidavits would not rebut Dongguan's *prima facie* case of service in the Rule 60(b)(4) context, they tend to demonstrate that default was not willful in the Rule 60(b)(6) context.

7

However, Desen's more recent actions suggest that it is attempting to evade responsibility. For example, the instant motion was filed only after Desen discovered that its bank accounts were frozen,[4] and Mrs. Wu and Mr. Xu attempted to withdraw approximately $1.7 million in funds from its bank account, all while failing to respond to Dongguan's information subpoena. Although these actions call into question Mrs. Wu and Mr. Xu's credibility concerning receipt of process, it is unnecessary for the Court to determine whether default was willful since the Court declines to vacate default judgment based on the other two factors, discussed below.

### B. Whether Setting Aside the Default Would Prejudice Dongguan

Dongguan argues that it would be prejudiced by vacatur because it has already incurred significant expenses to obtain and enforce the judgment, and "[t]he prospect of [Desen] trying to hide assets from [Dongguan] is . . . very real." Doc. 33 at 7–8.

In considering whether a plaintiff would be prejudiced if a default judgment were vacated, the Court must take into account more than mere delay or passage of time. *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983); *see also Enron Oil Corp.*, 10 F.3d at 98. A plaintiff may demonstrate prejudice by showing "that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis*, 713 F.2d at 216 (internal quotation marks and citation omitted). Prejudice may also be present if delay would "thwart plaintiff's recovery or remedy . . . or provide greater opportunity for fraud and collusion." *Green*, 420 F.3d at 110 (internal quotation marks and citation omitted). To meet this standard, "the plaintiff

---

[4] Dongguan argues that vacatur should be denied for the independent reason that the motion to vacate was not filed within a "reasonable time," as required for Rule 60(b) motions. Doc. 33 at 8; *see* Fed. R. Civ. P. 60(c)(1). The instant motion was filed on May 12, 2025, almost four months after default judgment was entered on January 22, 2025, notwithstanding that Desen received proper notice of the default judgment order on January 31, 2025, Doc. 34-4, retained counsel on February 17, 2025, Doc. 31-1 ¶ 22, and notified Dongguan of its intention to move for vacatur as early as March 5, 2025. *Id.* ¶ 32, Doc. 33 at 5. Counsel for Desen attests that much of the delay in filing the motion is attributable to him and his workload. Doc. 31-1 ¶ 23. The Court makes no determination as to whether the delayed filing weighs against vacatur, given that the Court denies the motion based on other factors.

8

must demonstrate that any prejudice resulting from the defendant's default cannot be rectified in the Court in another manner were the default to be vacated." *Murray Engineering, P.C. v. Windermere Properties LLC*, No. 12 Civ. 52 (JPO), 2013 WL 1809637, at *5 (S.D.N.Y. Apr. 30, 2013).

Here, the Court finds that Dongguan would be prejudiced were the Court to vacate default judgment. Desen failed to respond to Dongguan's information subpoena, even after the Court agreed to hold the instant motion in abeyance to allow for potential settlement; it attempted to withdraw $1.7 million out of its bank account, with no apparent or stated intention to use those funds to satisfy its debt; moreover, it filed the instant motion only after its bank accounts were frozen. This activity is highly indicative that Desen is attempting to avoid satisfying its debt and thereby, to further frustrate Dongguan's attempts to obtain recovery. *See FedEx TechConnect, Inc. v. OTI, Inc.*, No. 12 Civ. 1674 (RJS), 2013 WL 5405699, at *9 (S.D.N.Y. Sept. 23, 2013) (finding that the defendant was "seeking to evade payment of its debt," in part because it had paid no portion of the debt nor responded to subpoenas, and holding that, therefore, "where [plaintiff] has obtained a judgment and taken steps in enforcing that judgment by restraining defendant's bank account, . . . vacating the judgment at this stage would prejudice [plaintiff] by providing defendant further opportunities to hide its assets or otherwise evade payment of its debts.").

Accordingly, this factor counsels against vacatur.

### C.  Whether a Meritorious Defense Was Presented

Desen argues that it has a meritorious defense to the underlying action, principally, that the goods were shipped in an untimely manner. Doc. 31-1 ¶ 27.[5] It

---

[5] Desen also asserts three affirmative defenses in its proposed answer: (1) that Dongguan did not ship the goods in a timely fashion and thereby caused loss and damages to Desen; (2) that Desen did not breach any contractual obligations; and (3) that the proper venue for this matter is the Eastern District of New York, because Desen's principal place of business is in Queens. Doc. 31-10 ¶¶ 18, 19, 20. As to the third affirmative defense, Dongguan argues that this District is a proper venue because, while Desen's registered address is in Queens, its business address is in Manhattan. *See* Doc. 33 at 11. Moreover, Dongguan states, "Plaintiff's business dealings were consistently with Defendant's Manhattan business office, not [the]

claims that both parties were aware that Desen expected to receive the goods within 30 days of the planned shipping date, and that the allegedly uniform tardiness of the goods "thwart[ed] the business purposes of Desen Inc., and violat[ed] the course of dealing between the two parties."[6]  *Id.* ¶¶ 28, 29.

To make a sufficient showing of a meritorious defense, a defendant need not prove the defense conclusively. *McNulty*, 137 F.3d at 740.  A defendant must, however, present facts that if proven at trial, would constitute a complete defense. *Enron Oil Corp.*, 10 F.3d at 98; *see also Green*, 420 F.3d at 109 (citing *McNulty*, 137 F.3d at 740). Defaulting defendants must "present more than conclusory denials when attempting to show the existence of a meritorious defense." *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001).

Here, Desen's argument that the goods were late does not amount to a complete, meritorious defense against the breach of contract, unjust enrichment, and account stated claims.  Desen only generally states that the parties' business relationship "was premised on the principle that time is of the essence," Doc. 32-2 ¶ 44; it does not articulate whether, under the operative contract, Dongguan's purported delays constituted a breach or whether Desen appropriately withheld payment.  Moreover, Desen does not claim to have rejected the goods, revoked acceptance of the goods, nor objected to the invoices and statements provided.  Indeed, Desen paid $1,127,957 (before the deduction of wire transfer fees) of the total of $1,999,857 that was invoiced.  Doc. 32-1 ¶¶ 13, 14. Therefore, even if there were in fact delays, those delays—without more—would be insufficient to establish that Desen was permitted to withhold payment under the contract,

---

family house in Queens." *Id.* (citing Doc. 31-2 ¶ 6).  The propriety of the first and second affirmative defenses, which Desen discusses in the instant motion itself, are discussed below.

[6] In her affidavit, Mrs. Wu states that "sixteen sets of deliveries were delayed due to late production and shipping." Doc. 31-2 ¶ 21.

entitled to keep or sell[7] the unpaid-for goods under unjust enrichment principles, or exempted from paying invoices it had accepted.[8]  Therefore, Desen's arguments do not establish a meritorious defense against the claims for its failures to pay.

Accordingly, this factor counsels against vacatur.

On balance, the Court finds that the factors predominantly weigh against vacatur.

## IV.   CONCLUSION

For the foregoing reasons, Desen's motion to vacate the default judgment is DENIED.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 31.

It is SO ORDERED.

Dated:   July 28, 2025
         New York, New York

EDGARDO RAMOS, U.S.D.J.

---

[7] In her affidavit, Mrs. Wu states that she stored some of the allegedly delayed goods in a warehouse at a cost, and was able to sell certain goods for a lower-than-intended price.  *See, e.g.*, Doc. 31-2 ¶¶ 22, 23.

[8] "To prevail on a claim for account stated, a plaintiff must establish the following elements: '(1) an account was presented; (2) it was accepted as correct; and (3) [the] debtor promised to pay the amount stated.'" *Yiwu Lizhisha Access. Co., Ltd. v. Jjamz, Inc.*, 336 F. Supp. 3d 179, 183 (S.D.N.Y. 2018) (citations omitted).