IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x    Civil Action No.: 1:24-cv-03388-ER
Dongguan Cheng One Co., Ltd.,

                Plaintiff / Judgment Creditor,    **Hon. Edgardo Ramos**
      -against-

Desen Inc.,
              Defendant / Judgment Debtor.
----------------------------------------------------------------x
Yangyang Wu,

            Contemnor.
----------------------------------------------------------------x

## Plaintiff's Memorandum of Law in Support of OTSC for Additional Sanctions Against Yangyang Wu

Plaintiff Dongguan Cheng One Co., Ltd., ("Plaintiff"), by and through its attorneys Mazzola Lindstrom LLP, submits this memorandum in support of its motion for further sanctions on the already sanctioned non-party Yangyang Wu ("Wu"), who is the principal of defendant Desen Inc. ("Desen"), and who has already been held in contempt, as the culmination of repeated failures to cooperate with the Court's judgment and orders.

## I.    Brief History

Plaintiff here provides a brief history of Desen's and Wu's non-compliance with their obligations.

In 2021, Desen issued purchase orders to Plaintiff for sale of goods. Desen performed and delivered the goods, and issued invoices for which payment was due from late 2021 to early 2022. Of a total debt of $1,999,857, Desen paid only $1,127,957, leaving an outstanding debt of $871,900. On May 2, 2024, Plaintiff sued Desen over the unpaid debt. (ECF 1). On January 2, 2025, the Court granted default judgment to Plaintiff against Desen.

1

The judgment included: (a) $873,260 in principal for unpaid goods, (b) costs and disbursements of $519.79, and (c) "prejudgment interest at the statutory rate from the due dates of invoices" which Plaintiff has calculated, at 9% per annum, to be $219,244.92.

This makes for a total judgment of $1,093,024.71, not including post-judgment interest which plaintiff has calculated, at 4.21% per annum, to be $126.07 per day since January 2, 2025.

Desen then hired counsel who according to the docket still represents Desen. In March of 2025, Plaintiff issued an information subpoena to Desen, inquiring as to the whereabouts of its assets. In early May of 2025, Plaintiff restrained Desen's bank accounts. Only then did Desen move to vacate the default judgment. The Court held the motion in abeyance, after the parties agreed upon holding the motion in abeyance on condition that defendant provide sworn responses to the information subpoena within one week, *i.e.*, by June 12th. However, Desen did not and has never answered the subpoena.

On June 5, 2025, the Court heard argument, and Desen's counsel Aleksander Milch requested time to attempt to settle the case, asking that the Court hold in abeyance for one week its issuance of an order on the motion. Plaintiff agreed, but suggested that the defendant be given more than one week, as one week would likely not be sufficient, and further suggested that the abeyance be on condition that defendant provide sworn responses to the information subpoena within one week, *i.e.*, by June 12th. Defendant agreed to that condition, advising that the responses would be provided within a week. The Court held the motion in abeyance on those terms, and directed that the parties inform the Court by June 26, 2025, whether they were able to reach a settlement. Plaintiff's counsel repeatedly contacted Desen's counsel both before and after the June 12, 2025, due date for responses to the information subpoena, to enquire as to the status of the

2

responses, and Desen's counsel repeatedly promised responses to the information subpoena. None was ever provided.

On July 28, 2025, the Court denied Desen's motion to vacate the default judgment. The court noted the following:

> Desen's more recent actions suggest that it is attempting to evade responsibility. For example, the instant motion was filed only after Desen discovered that its bank accounts were frozen, and Mrs. Wu and Mr. Xu attempted to withdraw approximately $1.7 million in funds from its bank account,[1] all while failing to respond to Dongguan's information subpoena. … Here, the Court finds that Dongguan would be prejudiced were the Court to vacate default judgment.  Desen failed to respond to Dongguan's information subpoena, even after the Court agreed to hold the instant motion in abeyance to allow for potential settlement; it attempted to withdraw $1.7 million out of its bank account, with no apparent or stated intention to use those funds to satisfy its debt; moreover, it filed the instant motion only after its bank accounts were frozen. This activity is highly indicative that Desen is attempting to avoid satisfying its debt and thereby, to further frustrate Dongguan's attempts to obtain recovery. … Desen's arguments do not establish a meritorious defense against the claims for its failures to pay.
> (ECF 38 at 8, 9, 11.)

Plaintiff was able to obtain only a paltry sum from Desen's restrained bank accounts: $12,207.11 after the sheriff took its cut of $610.36. Plaintiff was able to see into the personal bank accounts of Yangyang Wu and her husband Fei Xu at the same banks, and found them to be empty as well.

Plaintiff eventually moved to find Yangyang Wu in contempt. On February 3, 2026, the Court entered an order finding her in contempt (ECF 48):

> IT IS HEREBY ORDERED that contemnor Yangyang Wu is FOUND IN CIVIL CONTEMPT of this Court for her willful failure to comply with Plaintiff/Judgment Creditor Dongguan Cheng One Co., Ltd.'s post-judgment information subpoena and this Court's prior Orders.

> IT IS FURTHER ORDERED that Ms. Wu shall purge her contempt by serving complete and sworn written responses, together with all responsive documents, to Plaintiff/Judgment Creditor's information subpoena no later than seven days from the date of this Order by emailing Plaintiff/Judgment Creditor's counsel.

---

[1] The bank account did not actually have $1.7 million in it. It was almost empty.

IT IS FURTHER ORDERED that Plaintiff/Judgment Creditor Dongguan Cheng One Co., Ltd. is AWARDED its reasonable attorneys' fees and costs incurred in bringing this Order to Show Cause. Plaintiff shall submit a fee application within fourteen days of this Order.

Plaintiff moved for attorneys' fees, and on February 19, 2026, the Court ordered the following (ECF 52):

WHEREAS, on February 3, 2026, this Court found Yangyang Wu in civil contempt and awarded Plaintiff its reasonable attorneys' fees and costs incurred in bringing the order to show cause, IT IS HEREBY ORDERED that: 1. Plaintiff is awarded attorneys' fees in the total amount of $14,365.00, payable by Yangyang Wu; 2. Yangyang Wu shall pay this amount within fourteen days of entry of this order; 3. This award shall accrue post-judgment interest pursuant to 28 U.S.C. § 1961 from the date of entry of this order until paid. 4. This award is in addition to, and does not alter, Ms. Wu's continuing obligation to comply with this Court's prior orders. 5. Failure to timely comply with this order may result in additional sanctions.

On February 19, 2026, Plaintiff's counsel sent the Court's February 19th Order by certified mail to Yangyang Wu at the same address, (10312 51st Avenue, Corona, Queens, New York 11368) to which Plaintiff has directed all previous service, and Yangyang Wu signed and returned the certified mail receipt.

Yangyang Wu has not done anything to comply with the Court's February 3rd and February 19th Orders.

## II.    Plaintiff Moves for Additional Sanctions Against Contemnor Yangyang Wu

Plaintiff seeks coercive and compensatory sanctions pursuant to the Court's civil contempt authority and inherent powers. To the extent applicable, Plaintiff also relies on Federal Rule of Civil Procedure 37 as an additional basis for recovery of attorneys' fees.

Plaintiff, hereby notifies the Court of Wu's continued non-compliance with its orders, and moves for Wu's continued non-compliance to be treated as contempt, justifying a new round of coercive sanctions to compel her compliance. Plaintiff requests the following sanctions on Wu personally, not on her attorney:

(1) Attorneys' fees for having to bring this motion, pursuant to the Court's contempt authority and, independently, under FRCP 37(b)(2)(C), which requires the Court to order Yangyang Wu to pay Plaintiff's reasonable expenses in bringing this motion if her continued non-compliance be found to be in contempt under FRCP 37(b)(2)(A)(vii).

(2) A fine owed to Plaintiff of $1,000 per day, to start running one week after the Court's order granting Plaintiff's motion for sanctions.

(3) That Wu be subject to arrest and imprisonment for a time not to exceed the legal maximum, or for any limited amount of time that the Court deems just, if she does not respond to the information subpoena within three weeks after the Court's order granting Plaintiff's motion for sanctions; in particular, that the Court indicate that it will sign an arrest warrant either immediately or at the proper time in the future, directing the United States Marshals to take Wu, after she miss the deadline for her compliance, into their custody and hold her there until she responds to the information subpoena or demonstrates her inability to do so or the inability of anyone to do so on her behalf.

(4) Any other sanction which the Court in its wisdom and experience deems appropriate, or any alteration or modification that the Court sees fit to make in wording to the foregoing requested sanctions.

## III.    The Sanctions Are Justified

The sanctions of fine by day and imprisonment for a limited time are available to this Court, as precedent acknowledges.

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3). "If a party is adjudged to be in civil contempt, the court must determine what sanctions are necessary to secure future compliance with its order and to compensate the complaining party for past noncompliance." … Civil contempt sanctions may be tailored either to "secure future compliance with court orders" ("coercive sanctions") or to

"compensate the party that has been wronged" ("compensatory sanctions"). … In determining the proper measure of sanctions, the court must consider "(1) the character and magnitude of the harm threatened by the continued contumacy, (2) the probable effectiveness of the sanction in bringing about compliance, and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden." … "Arrest is an appropriate coercive sanction for civil contempt, so long as its purpose is not punitive but is instead to compel the contemnor to perform the required act." … In order to imprison a contemnor to compel compliance with the court's orders, the court must find that the contemnor's disobedience is willful. … [T]he court must make the following findings before issuing a warrant for a contemnor's arrest: (1) that the character and magnitude of the harm threatened by the continued contumacy are sufficiently serious; (2) that the sanction will probably be effective in bringing about compliance with the court's orders; (3) that the contemnor has the ability to pay the sanctions; and (4) that the contemnor's failure to comply was willful. … Contempt is willful if, among other factors, the contemnor has not made a good-faith effort to comply.

*Friedman v. Self Help Cmty. Servs.*, 2018 U.S. Dist. LEXIS 177104, *6-7, 9-10 (E.D.N.Y., Oct. 12, 2018) (internal citations omitted).

The sanctions requested by Plaintiff are intended to be coercive, not punitive. As to the first factor, that of the magnitude of Wu's continued non-compliance: if no sanction be applied, then Yangyang Wu will continue her lack of cooperation in locating the assets of her business, and if any fraudulent transfers were made to evade this debt, the statute of limitations for suing on them will eventually, perhaps even soon given the age of this debt, become time-barred, or the assets in any event be dissipated, leaving Plaintiff practically remediless after half a decade of struggling to be paid, for no reason other than the contempt of court practiced by Wu personally. The consequences of Wu's continued non-compliance are therefore not of small magnitude to Plaintiff.

As to the probable effectiveness of the sanctions, a fine ought to make Wu feel personally responsible for ensuring compliance, and unable to hide behind the fact that the judgment was against her business entity. All the more, the threat of arrest should be a great incentive to cooperate. The requested sanctions of fine and arrest, as asked for by Plaintiff, are not to come into effect immediately, but are to spring into being after a grace period following service. This is

because the purpose of these sanctions is coercive, not punitive. She will see the fine coming and may opt out of it in advance by responding to the subpoena. If she nonetheless forbears compliance while being fined, then she will see arrest coming. She may opt out of it by simply complying. Even after imprisonment, Plaintiff is not seeking to force her to pay her way out of prison. Plaintiff is asking simply for her to respond to the information subpoena. Thus, the sanctions are coercive but not punitive.

As to the contemnor's financial resources and the consequent seriousness of the sanction's burden, Wu's precise financial condition is unknown because she has apparently moved her money out of her known erstwhile personal accounts, but she has managed to maintain a residence in the same property through the history of this debt, and the mounting fines will not any time soon amount to more than a small percentage of the already existing judgment that in effect already rests on her to satisfy as the principal of Desen.

As to the specific legal standard for imposing a sanction of arrest, the first factor is satisfied in that Wu's continued non-compliance is sufficiently serious: control and understanding of Desen was centralized in Wu, and her continued non-compliance will allow fraudulent transfers to become time-barred, and will allow continued dissipation of assets. As to the second factor, the sanction of arrest is expected to bring about compliance because Wu, to get out of arrest, is only being asked to comply with the subpoena, not to pay her debt, and so even if she be penniless, she should be able to accomplish what is asked of her. For the same reason, the third factor, of "ability to pay the sanctions," is not an issue here. As to the fourth factor, of whether the current contempt is willful, (1) the Court has already noted in its denial of vacatur that Desen (*i.e.*, Yangyang Wu) was willfully avoiding paying its debt; (2) Yangyang Wu has already been held in contempt of court for "her willful failure to comply with Plaintiff/Judgment Creditor Dongguan Cheng One

Co., Ltd.'s post-judgment information subpoena and this Court's prior Orders" (ECF 48); and (3) Yangyang Wu signed for receipt of the Court's February 19th Order and still has not complied with it. Thus, it is a fair conclusion that her newest refusal to comply is willful contempt too. After all, as *Friedman* at *10 says, "Contempt is willful if, among other factors, the contemnor has not made a good-faith effort to comply." And Wu has not made a good-faith effort to comply. A sanction of arrest has been held appropriate where the contemnor's "violation of the court's orders has been willful, and … the court does not believe that additional monetary sanctions are likely to be effective given his refusal to pay what he already owes." *Friedman* at *12.

### Conclusion

For all of the above reasons, Plaintiff and Judgment Creditor Dongguan Cheng One Co., Ltd., respectfully requests that the Court find Yangyang Wu to be in contempt for her non-compliance with the Court's Order having already found her in contempt, and that the Court impose on her coercive and compensatory sanctions, and grant all such other relief as the Court deems just and proper.

Dated: April 23, 2026

Respectfully submitted,

MAZZOLA LINDSTROM, LLP

_____
Shan (Jessica) Chen
Richard E. Lerner
*Counsel for Plaintiff /Judgment Creditor*
*Dongguan Cheng One Co., Ltd.*
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
(d) 646-416-6280; 646-813-4345
(m) 347-652-9046; 917-584-4864
jessica@mazzolalindstrom.com
richard@mazzolalindstrom.com

8